1

2    **UNITED STATES DISTRICT COURT**

3    **DISTRICT OF NEVADA**

4    THARALDSON FINANCIAL GROUP, INC.; )
     IRONSHORE SPECIALTY INSURANCE        )
5    COMPANY; and INDUSTRIAL RISK         )     Case No.: 2:13-cv-01861-GMN-GWF
     INSURERS,                            )
6                                         )     **ORDER**
                        Plaintiffs,       )
7          vs.                            )
                                          )
8    AAF McQUAY INC. dba McQUAY           )
     INTERNATIONAL, a Minnesota corporation; )
9    and DOES 1 through 40, inclusive,    )
                                          )
10                      Defendants.       )
                                          )
11   _____  )

12

13          Pending before the Court is the Motion for Judgment on the Pleadings (ECF No. 7) filed

14   by Defendant Daikin Applied Americas Inc. f/k/a AAF-McQuay ("McQuay") on October 15,

15   2013.  Plaintiffs Tharaldson Financial Group, Inc. ("Tharaldson"), Ironshore Specialty

16   Insurance Company ("Ironshore"), and Industrial Risk Insurers ("Industrial") (collectively

17   "Plaintiffs") filed their Response in Opposition (ECF No. 13) on October 31, 2014, and

18   McQuay filed its Reply (ECF No. 15) on November 11, 2013.

19   **I.     BACKGROUND**

20          Plaintiffs initially filed the current action in Nevada state court on August 9, 2013.

21   (Complaint, ECF No. 1-1).  According to the Complaint, a fire occurred on or about August 11,

22   2010 at a property located at 5735 Dean Martin Drive, Las Vegas, Nevada (the "Property").

23   (*Id.* ¶ 1).  The fire was caused by the failing of the heating ventilation and cooling ("HVAC")

24   unit located at the Property, which was manufactured and sold by McQuay and the unnamed

25   defendants. (*Id.* ¶¶ 10–11).  The Property, which was at all relevant times managed and

     operated by Tharaldson and was insured by Ironshore and Industrial (the "Insurers"), suffered

1    damages in excess of $10,000 as a result of the fire. (*Id.* ¶¶ 1, 9).  These damages were

2    subsequently paid out to Tharaldson by Ironshore and Industrial under their applicable

3    insurance policies, which led to the legal and equitable subrogation of Tharaldson's rights to

4    the Insurers. (*Id.* ¶ 8).

5         Plaintiffs Complaint asserts three causes of action against McQuay for (1) strict products

6    liability, (2) negligence, and (3) breach of implied warranty. (*Id.* ¶¶ 14–23).  McQuay

7    subsequently removed the action to federal court (ECF No. 1) on October 11, 2013 and filed

8    the current pending Motion for Judgment on the Pleadings (ECF No. 7).

9    **II.    LEGAL STANDARD**

10        Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—

11   but early enough not to delay trial—a party may move for judgment on the pleadings."

12   "Judgment on the pleadings is properly granted when, accepting all factual allegations in the

13   complaint as true, there is no issue of material fact in dispute, and the moving party is entitled

14   to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

15   Accordingly, "[a]nalysis under Rule 12(c) is substantially identical to analysis under Rule

16   12(b)(6) because, under both rules, a court must determine whether the facts alleged in the

17   complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.*

18        In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege

19   "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

20   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has

21   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

22   reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

23        The Court, however, is not required to accept as true allegations that are merely

24   conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden

25   State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action

     with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a

1 violation is *plausible*, not just possible. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at

2 555) (emphasis added).

3 **III.   DISCUSSION**

4      In its motion, McQuay asserts that Plaintiffs' claims for strict products liability and

5 negligence are barred by the economic loss doctrine and that Plaintiffs' claim for breach of

6 implied warranty is barred by a contractual disclaimer. (Mot. for Judgment 6:1-10:10, ECF No.

7 7).  McQuay further argues that even if it is not entitled to judgment on the pleadings for all of

8 Plaintiffs' claims, Plaintiffs' damages for those claims are still limited by an express

9 contractual disclaimer. (*Id.* 10:11-11:25).

10   **A. Economic Loss Doctrine**

11      The Supreme Court of Nevada has explained that "the economic loss doctrine marks the

12 fundamental boundary between contract law, which is designed to enforce the expectancy

13 interests of the parties, and tort law, which imposes a duty of reasonable care and thereby

14 generally encourages citizens to avoid causing physical harm to others." *Terracon Consultants*

15 *W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009).  To accomplish this purpose,

16 "the doctrine bars unintentional tort actions when the plaintiff seeks to recover purely economic

17 losses." *Id.* (internal quotations omitted).  Accordingly, "a plaintiff may not recover economic

18 loss under theories of strict products liability or negligence." *Calloway v. City of Reno*, 993

19 P.2d 1259, 1264 (Nev. 2000) *overruled on other grounds by Olson v. Richard*, 89 P.3d 31, 33

20 (Nev. 2004) (finding that the economic loss doctrine does not bar recovery for negligence

21 claims brought under Nevada Revised Statutes Chapter 40).  Moreover, when an integrated

22 component of a product, such as a building's heating or plumbing system, fails and causes

23 damage to the larger product but not to other property, only economic loss has occurred. *Id.* at

24 1268–69; *see also* (*Fireman's Fund Ins. Co. v. Sloan Valve Co.*, 2:10-CV-01816-RLH, 2011

25 WL 5598324, at *2 (D. Nev. Nov. 16, 2011) ("In a case such as this, when an integral

1    component of a product (including a building) fails and damages the larger product, only

2    economic loss occurs and, thus, tort recovery is barred.").

3          In their Complaint, Plaintiffs seek recovery of damages to the Property under theories of

4    both strict products liability and negligence. (Complaint ¶ 11, ECF No. 1-1).  Plaintiffs, argue

5    that the economic loss doctrine does not apply to bar these claims because the HVAC unit—

6    which Plaintiffs admit had been installed in the Property for over a year—was not an integral

7    part of the Property, or at least whether the HVAC unit was an integrated part of the Property is

8    a question of fact. (Resp. 5:1-7:13, ECF No. 13).  The Court disagrees.

9          In *Calloway*, the Supreme Court of Nevada specifically held that "a building's heating

10   and plumbing system [is a] necessary and integrated part[] of the greater whole….

11   Consequently, when a heating and plumbing system damages the building as a whole, the

12   building has injured itself and only economic losses have occurred." *Calloway*, 993 P.2d at

13   1268; *see also Sloan Valve Co.*, 2:10-CV-01816-RLH, 2011 WL 5598324, at *3 (D. Nev. Nov.

14   16, 2011) (finding on summary judgment that a toilet flush valve was an integrated and integral

15   part of a building).  Therefore, while it may be a question of fact whether some products

16   installed in buildings retain their separate identity as products, in Nevada, an installed HVAC

17   unit is an integrated and integral part of the building, and damage to the Property caused by the

18   HVAC is purely economic loss.

19         However, in the Complaint and in their Response, Plaintiffs not only assert damages to

20   the Property, but they also assert damages to other personal property. (Complaint ¶ 11, ECF

21   No. 1-1; *see also* Resp. 7:2-4, ECF No. 13).  Damage to other property beyond the building in

22   which the HVAC unit was an integrated part is not a purely economic loss.  *See Calloway*, 993

23   P.2d 1259, 1263 ("Purely economic loss is generally defined as the loss of the benefit of the

24   user's bargain ... including ... pecuniary damage for inadequate value, the cost of repair and

25   replacement of the defective product, or consequent loss of profits, *without any claim of*

1    *personal injury or damage to other property*.") ) (emphasis added) (internal quotations omitted).

2    Therefore, because Plaintiffs have alleged damage to "other property," the economic loss

3    doctrine does not apply at this stage in the litigation and tort recovery may still be permitted for

4    all of Plaintiffs' alleged damages. *See id.*; *Peri & Sons Farms, Inc. v. Jain Irr., Inc.*, 933 F.

5    Supp. 2d 1279, 1286 (D. Nev. 2013) ("even though 'purely economic losses' are not

6    recoverable in strict products liability or negligence, when a defective product causes personal

7    injury or damage to 'other property,' the economic loss doctrine does not apply and tort

8    recovery may be permitted.); *see also* Restatement (Third) of Torts: Prod. Liab. § 21 cmt. e

9    (1998) ("The characterization of a claim as harm to other property may trigger liability not only

10    for the harm to physical property but also for incidental economic loss.  The extent to which

11    incidental economic loss is recoverable in tort is governed by general principles of legal

12    cause.").  Accordingly, McQuay is not entitled to judgment on the pleadings for Plaintiffs'

13    claims of strict product liability and negligence.

14         **B.  Breach of Implied Warranty & Limitation of Damages**

15         McQuay's argument for judgment on the pleadings regarding Plaintiffs' claim for breach

16    of implied warranty and a limitation of damages is based upon express disclaimers contained in

17    a document entitled "Terms & Conditions of Sale (North America)" (the "Terms &

18    Conditions") (ECF N0. 6-1), which McQuay attached to its Answer to Plaintiffs' Complaint.

19    (Mot. for Judgment 8:20-10:10, ECF No. 7).  This two-page document, however, is not signed

20    by either party and, other than titling the document an "agreement" in its filings, McQuay has

21    failed to attach documentation showing or even allege that the Terms & Conditions was

22    received by Plaintiffs or formed an binding agreement between the parties.[1]  Moreover, while

23

24    [1] In its Reply, McQuay attached a one-page document entitled "Final Rep Order Acknowledgement," which
McQuay describes as a "signed 'Acknowledgement' letter for the Terms and Conditions." (Reply 7:2-3, ECF
25    No. 15; Acknowledgement, ECF No. 15-1).  This document, however, is on McQuay's letterhead and appears to
be nothing more than an internal record of McQuay's indicating that the HVAC unit was ordered and shipped to
Tharaldson, not an indication that Plaintiffs ever received or agreed to the Terms & Conditions.

1   they do not expressly deny the authenticity of the Terms & Conditions, in their Response,

2   Plaintiffs contend that McQuay has failed to sufficiently allege that Plaintiffs agreed to the

3   provision within the Terms & Conditions or even received the document. (Resp. 7:14-8:6, ECF

4   No. 13).

5         "As a general matter, a district court may not consider any material outside of the

6   pleadings when ruling on a Rule 12(b)(6) motion.[2] *Lee v. City of Los Angeles*, 250 F.3d 668,

7   688 (9th Cir. 2001)."  However, "documents whose contents are alleged in a complaint and

8   whose authenticity no party questions, but which are not physically attached to the pleading,

9   may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the

10  motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454

11  (9th Cir. 1994).  Otherwise, if the district court considers materials outside of the pleadings, the

12  motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d);

13  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

14        While the Terms & Conditions may create a valid and binding contract between the

15  parties and Plaintiffs have not expressly disputed the authenticity of the document, McQuay has

16  failed to sufficiently allege that the Terms & Conditions created a binding agreement and

17  Plaintiffs have put the authenticity of the document in question.  *See Garcia v. Fannie Mae*,

18  794 F. Supp. 2d 1155, 1164 (D. Or. 2011) ("[P]laintiff's failure to dispute the authenticity of

19  the alternative Notices does not amount to their admission that the alternative Notices are

20

21  (Acknowledgement, ECF No. 15-1).  Moreover, because this document was in McQuay's Reply, Plaintiffs have
    not had an opportunity to refute its authenticity.

22

23  [2] Because "[a]nalysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6)," the Court
    applies the same rules in determining what documents may be considered in ruling on the motion. *See Chavez*,
    683 F.3d at 1108; *see also Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989)

24  ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded
    by the court, the motion shall be treated as one for summary judgment.") (quoting an older version of Rule

25  12(c)).

authentic or that they were provided with complete copies of the alternative Notices at closing. Thus, one of the prerequisites to the court's consideration of the alternative Notices—i.e., that the authenticity of the documents not be contested—is absent here."). Accordingly, at this stage in the proceedings, the Court cannot take judicial notice of the Terms & Conditions or resolve the issue of whether it creates a binding contract that limits Plaintiffs' claims for relief. *See Newsom v. Countrywide Home Loans, Inc.*, 714 F. Supp. 2d 1000, 1009 (N.D. Cal. 2010) ("Plaintiffs takes exception to the authenticity of the documents presented by Countrywide, and dispute that they received copies of *completed* forms bearing their signature. As such, the Court cannot, in connection with the instant motion, resolve the question of whether Plaintiffs, in fact, were provided with the completed notices, as alleged by Countrywide."). "That determination is more appropriately made by way of a motion for summary judgment." *Id.* Therefore, McQuay's is not entitled to judgment on the pleadings dismissing Plaintiffs' claim for breach of implied warranty or limiting Plaintiffs' potential damages.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that McQuay's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**.

**DATED** this __30__ day of September, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge